wo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Dylan Moore, | ) | No. 07-1483-PHX-ROS |
|---|---|---|
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Computer Associates International, Inc., | ) | |
| Defendant. | ) | |
| | ) | |

On August 2, 2007, Plaintiff filed a Complaint alleging Defendant, Plaintiff's former employer, unlawfully discriminated against Plaintiff because of mental disabilities, in violation of the Americans with Disabilities Act ("ADA"), and because of race, in violation of 42 U.S.C. § 1981 (Doc. 1). With respect to the ADA claim, Plaintiff alleges two discriminatory acts: (1) Defendant's failure to grant Plaintiff a requested accommodation in August/September 2003 and (2) Defendant's termination of Plaintiff in January 2004. With respect to the § 1981 claim, Plaintiff alleges one discriminatory act: the January 2004 termination.

On January 14, 2009, the parties filed cross-motions for summary judgment (Docs. 58, 60). On March 4, 2009, Plaintiff filed a Motion for Sanctions (Doc. 66) alleging Defendant's failure to timely disclose the names of two corporate witnesses, whose statements were used to support Defendant's summary judgment motion, violated Federal

Rules of Civil Procedure 16 and 26 and warranted exclusion of the statements. Before the Court are Defendant's Motion for Summary Judgment (Doc. 58), Plaintiff's Motion for Summary Judgment (Doc. 60), and Plaintiff's Motion for Sanctions (Doc. 66). For the following reasons Defendant's Motion will be granted in part and Plaintiff's Motions will be denied.

## BACKGROUND

Plaintiff Dylan Moore was hired by Defendant Computer Associates International in November 1999 as an Instructional Consultant ("IC") (Docs. 61 at ¶ 4; 74 at ¶ 4). Defendant is a business consulting and software development company that provides onsite training for its products (Docs. 61 at ¶ 14; 74 at ¶ 14). During training sessions, ICs generally provide in person instruction for groups of approximately twelve-to-fifteen attendees either at Defendant's training facilities, located throughout the United States, or at a location chosen by the customer (Docs. 61 at ¶ 15; 74 at ¶ 15). As an IC, Plaintiff taught in-person training sessions throughout the country as well as Web Instructor-Led Learning "WILL" courses, which are online classes conducted via the internet (Docs. 59 at ¶¶ 123-24; 61 at ¶ 6). When not teaching, Plaintiff worked at home writing articles for Defendant's newsletter, staffing a help desk, preparing for future classes, and contacting former students for client development purposes (Docs. 61 at ¶ 12; 74 at ¶ 12).

Sometime in July or August 2003, Plaintiff began experiencing mental problems which impaired his ability to teach (Docs. 59 at ¶¶ 55-64; 61 at ¶ 68 ). On August 12, 2003, Plaintiff applied for reassignment to a Scheduling Coordinator position, which arguably required less mental ability than the IC position (Docs. 61 at ¶¶ 94, 128; 74 at ¶¶ 94, 128). On August 13, 2003, Plaintiff began seeing a psychologist, Dr. Celia Drake, who diagnosed Plaintiff with major depression, paranoid schizophrenia and bipolar disorder (Docs. 61 at ¶¶ 74-75; 74 at ¶¶ 74-75). Dr. Drake referred Plaintiff to a psychiatrist, Dr. Mary Nowlin, who gave a similar diagnosis (Docs. 61 at ¶ 76; 74 at ¶ 76). Subsequently, Plaintiff informed Mark Phillips (Plaintiff's direct supervisor) of his mental problems and difficulty teaching (Docs. 61 at ¶ 89; 74 at ¶ 89).

From August 27, 2003 to September 2, 2003, Plaintiff was absent from work because of illness (Docs. 59 at ¶ 26; 71 at ¶ 26). At the end of that period, Defendant requested medical documentation concerning Plaintiff's absence and Plaintiff complied by submitting a "Return to Work" form completed by neurologist Dr. Jason Reinhart (Docs. 59 at ¶ 26; 61 at ¶ 114; 71 at ¶ 26; 74 at ¶ 114). Plaintiff did not return to work on September 2 but rather went on leave, pursuant to the Family and Medical Leave Act ("FMLA"), until November 18, 2003 (Docs. 59 at ¶ 33; 71 at ¶ 33). During this time, Plaintiff's request for reassignment to the Scheduling Coordinator position was denied (Docs. 61 at ¶ 132; 74 at ¶ 132).

As a condition of taking FMLA leave, Plaintiff was required to submit a medical update in October 2003 and complied by submitting documents from Dr. Nowlin (Docs. 59 at ¶¶ 34, 38; 71 at ¶¶ 34, 38). After the FMLA time period expired, Plaintiff's leave was extended twice, on an informal basis, to January 16, 2004 (Docs. 59 at ¶¶ 39, 44; 71 at ¶¶ 39, 44). During this time, Defendant was provided with two additional medical updates from Dr. Drake (Docs. 59 at ¶¶ 41-42, 46; 71 at ¶¶ 41-42, 46). On January 19, 2004, Plaintiff was terminated because of Plaintiff's inability to perform the functions of his employment (Docs. 61 at ¶¶ 198, 203; 74 at ¶¶ 198, 203).

## DISCUSSION

### I. Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To enter summary judgment, the Court must examine all evidence and find no dispute concerning genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-256 (1986). The evidence of the non-moving party is to be believed, and all reasonable inferences drawn in its favor. *See id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). However, if the non-moving party bears the burden of proof at trial, the moving party's summary judgment motion need only highlight the absence of evidence supporting the non-moving party's claims. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323-25). The burden then shifts to the non-moving party who must produce evidence sustaining a genuine issue of disputed material fact. *See id.* An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49). Accordingly, a "court need not draw *all* possible inferences in [the non-movant's] favor, but only all *reasonable* ones." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002). A fact is "material" if it may affect the outcome of the case. *Far Out Prods., Inc.*, 247 F.3d at 992. Evidence produced to support motions for summary judgment must be admissible and otherwise adhere to the Federal Rules of Evidence. *See* Fed. R. Civ. P. 56(e)(1).

## II. Preliminary Matters

### A. Plaintiff's Motion for Sanctions

Plaintiff moves to strike two affidavits supporting Defendant's Motion for Summary Judgment, one from Defendant's Senior Vice President for Global Services Education (Lester) and another from Defendant's Vice President of Regional HR Business Partner (Di Lella) (Doc. 59 Ex. 1, 49). According to Plaintiff, neither Lester nor Di Lella was timely disclosed as an "individual likely to have discoverable information" and citation to the affidavits violates Federal Rules of Civil Procedure 26(a) and 26(e) ("Rule 26") as well as the Court's First Amended Rule 16 Scheduling Order (Doc. 37). Fed. R. Civ. P. 26(a)(1)(A)(i). Plaintiff thus seeks to strike the affidavits pursuant to Federal Rules of Civil Procedure 37(c) and 16(f). *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to

use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . ."); Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2) [including prohibition of evidence] . . . if a party or its attorney fails to obey a scheduling or other pretrial order."). Defendant concedes exclusion of the Di Lella affidavit but argues Lester was a corporate witness, designated under Federal Rule of Civil Procedure 30(b)(6), and thus Rule 26 disclosure was not required. The Court agrees with Defendant and the Motion will be denied.

Rule 26 requires a party to "provide to the other parties the name and, if known, the address and telephone number of each *individual* likely to have discoverable information." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). The text appears to support Defendant's interpretation, that is, limited to individuals and exclusive of corporate entities, an exclusion which would necessarily apply to individuals who testify on behalf of corporate entities. *See e.g. Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D. N.Y. 2003) (interpreting the word "individual" in Rule 26(a)(1)(A)(i) as inapplicable to corporate entities); *Garrett v. Trans Union, LLC*, 2006 WL 2850499, *7 (S.D. Ohio 2006) (the disclosure of corporate witnesses is not required under Rule 26(a)(1)).

Moreover, Defendant's interpretation of Rule 26(a)(1) also comports with the Federal Rules' separate treatment of corporations and individuals during discovery. For example, under Federal Rules of Civil Procedure 30 and 33 ("Rules 30 and 33"), a party requesting discoverable material from a corporation need not serve a notice of deposition or interrogatory upon a particular officer or agent of the corporation, as would be required if information were being discovered from an individual. Rather, the moving party need only submit the interrogatory or deposition questions to corporate counsel and the corporation is then required to designate an agent or officer with sufficient knowledge to be deposed or to answer the interrogatory. *See* Fed. R. Civ. P. 30(b)(6); 33(b)(1)(B). The purpose is to reduce the burden on both parties, by not requiring the movant to guess which corporate officer or

agent has the desired information and not requiring the respondent to expose all of its officers or agents to the burdens of discovery.[1]

The Lester affidavit gives six material statements concerning Defendant's general business model and how internet classes fit into the model. The information is not rooted in Lester's individual experience, but is corporate in nature and could have been elicited from a number of Defendant's executives.[2] Accordingly, Lester is not offering the sworn statements in her capacity as an "individual," defined by Rule 26(a)(1), but rather as a corporate spokesperson, as contemplated in Rule 30(b)(6). Plaintiff deposed Mrinalini Narendra, an executive in the Western Division of Defendant's Human Resources Department, during Defendant's 30(b)(6) deposition (Doc. 61 Ex. 17). It is uncertain whether Narendra had corporate knowledge of Defendant's general business model and how internet classes fit into the model. However, it is certain that if Plaintiff had wanted to depose Defendant on these topics, Plaintiff could have submitted the appropriate questions to Defendant within the body of the Rule 30(b)(6) deposition notice and Defendant would then have been obligated to produce a deponent with sufficient corporate knowledge to answer the questions (Doc. 56). Simply because Plaintiff failed to raise these questions does not entitle Plaintiff to strike the Lester affidavit; the responsibility for this oversight falls squarely on Plaintiff (Doc. 56). Accordingly, Plaintiff's Motion will be denied.

---

[1] *See* 1970 Amendments, Fed. Civ. P. 30(b)(6) ("The new procedure should be viewed as an added facility for discovery, one which may be advantageous to both sides as well as an improvement in the deposition process . . . It will curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it . . . The provision should also assist organizations which find that an unnecessarily large number of their officers and agents are being deposed by a party uncertain of who in the organization has knowledge.").

[2] It is noted that at least two of Defendant's Rule 26(a)(1)(A)(i) disclosures, Harry Born and Mark Phillips, were Defendant's former executive employees and could have discussed "internet training classes" or the "availability of internet training classes," which were the central topics of Lester's affidavit (Doc. 66 Ex. A). However, it appears Plaintiff failed to ask such questions during the Born and Phillips depositions.

**B. Plaintiff's Supplemental Statement of Facts**

On March 6, 2009, Plaintiff submitted a Supplemental Statement of Facts in support of Plaintiff's Motion for Summary Judgment (Doc. 70). On March 9, 2009, it was struck for Plaintiff's failure to explain why a Supplemental Statement was necessary or otherwise authorized by the Local Rules of Civil Procedure (Doc. 73). On March 27, 2009, Plaintiff submitted a Notice of Support, explaining why three factual statements from the Supplemental Statement should be permitted (Doc. 81). On April 10, 2009, Defendant filed an Objection (Doc. 89).[3] For the following reasons, Plaintiff's three supplemental facts will be considered.

As discussed in the March 9, 2009 Order, neither the Federal nor the Local Rules of Civil Procedure permit the filing of a supplemental statement of facts. *See* Fed. R. Civ. P. 56; LRCiv. 56.1. Local Rule 56.1(b) does, however, allow a party opposing a motion for summary judgment to submit a controverting statement of facts which may dispute the movant's statement of facts *and* include "additional facts that establish a genuine issue of material fact." LRCiv. 56.1(b). Such additional facts may be supported by evidence in the record, including previously uncited evidence as long as it is attached to the controverting statement. Plaintiff failed to follow procedure and instead submitted a supplemental statement of facts. Nevertheless, the three supplemental facts for which Plaintiff now seeks consideration are integral to Plaintiff's Opposition. Moreover, Defendant has not been prejudiced, as it had ample opportunity to respond to the three facts and did so, to a limited extent, in its Objection. Accordingly, Plaintiff's three supplemental facts, along with the corresponding evidence, will be considered and Defendant's Objection is overruled (Docs. 70 Ex. 3, 5; 81)

---

[3] Defendant also objects to the argument included in Plaintiff's Controverting Statement of Facts (Doc. 71), which Defendant contends violates Local Rule of Civil Procedure 56.1. Defendant's Objection is noted and the argument included in Plaintiff's Controverting Statement of Facts, beyond a designation of "disputed" or "undisputed" and a brief explanation corresponding to each of Defendant's facts, will be disregarded.

**III. Defendant's Motion For Summary Judgment: ADA Claim**

**A. *Prima Facie* Elements**

To present a *prima facie* case of employment discrimination under the ADA for wrongful termination or failure to accommodate a disabled employee, the plaintiff must show:

> (1) he is a disabled person within the meaning of the ADA;
>
> (2) he is qualified, that is, he is able to perform the essential functions of the job, with or without reasonable accommodation; and
>
> (3) he suffered an adverse employment action because of his disability.

*See Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) *(per curiam)*; *see also* 42 U.S.C. §§ 12112(a), (b)(5)(A) ("No covered entity shall discriminate against a qualified individual on the basis of disability," which includes, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . ."). Summary judgment is appropriate where a plaintiff fails to establish a genuine dispute of material fact for any of the ADA *prima facie* elements. *See McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1115 (9th Cir. 1999).

**B. Arguments**

Defendant argues Plaintiff is not a "qualified individual," that is, an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant does not dispute Plaintiff was a disabled person within the meaning of the ADA and experienced adverse employment actions which stemmed from Plaintiff's disability. Accordingly, the two central issues are whether Plaintiff was able to perform the essential functions of the IC and Scheduling Coordinator positions, with or without reasonable accommodation. Because Plaintiff bears the burden of establishing the *prima facie* elements,

Plaintiff must present evidence that there is a material issue of fact whether he is a qualified individual. *See Dark v. Curry County*, 451 F.3d 1078, 1087 (9th Cir. 2006).

Plaintiff contends he would have been able to perform the essential functions of the IC position in January 2004 with one of three reasonable accommodations, that is, (1) restructuring the IC position to allow Plaintiff to teach courses solely via the internet, (2) permitting Plaintiff to work part-time and gradually resume full-time IC duties or (3) allowing Plaintiff to take extended leave until he was able to resume his duties as an IC. Plaintiff also argues, even if he was unable to perform the essential functions of the IC position in January 2004, reassignment to a vacant Scheduling Coordinator position in August/September 2003 would have been an appropriate accommodation.

Defendant argues each of the proposed accommodations posed an undue hardship on Defendant or was otherwise unreasonable. In the alternative, Defendant argues Plaintiff was so disabled that he could not perform any job, regardless of accommodation, and thus all of the proposed accommodations were unreasonable. Defendant also argues, in the alternative, Defendant is not liable for failing to make the proposed accommodations because Defendant decided against them in good-faith via the ADA interactive process. [4]

---

[4] In a footnote, Defendant also argues three of the proposed accommodations, part-time work, extended leave and reassignment to the Scheduling Coordinator position, should not be considered because Plaintiff failed to raise them when responding to a set of contention interrogatories propounded during discovery (Doc. 58 at 13 n.2). This argument misapprehends the purpose of an interrogatory. Although contention interrogatories are "useful in narrowing and sharpening the issues," the general rule in the Ninth Circuit is that a party's answers to an interrogatory do not limit the party's ability to make an argument in future proceedings. 1970 Amendments, Fed. Civ. P. 33(b); *see also Donovan v. Crisostomo*, 689 F.2d 869, 875 (9th Cir. 1982) ("Interrogatories do not supersede or supplement pleadings, nor do they bind parties as an allegation or admission in a pleading or pre-trial order."); *accord Fort Hall Landowners Alliance, Inc. v. Bureau of Indian Affairs*, 2007 WL 2187256, *2-3 (D. Idaho 2007); Charles A. Wright, Arthur R. Miller & Richard L. Marcus, 8A Federal Practice & Procedure § 2181 (2009 ed.) (citing *Victory Carriers, Inc. v. Stockton Stevedoring Co.*, 388 F.2d 955, 959 (9th Cir. 1968)). Without a specific argument why Plaintiff's initial and supplemental answers to the contention interrogatories were so incomplete as to prejudice Defendant and warrant an exception to the rule, Defendant's argument will be rejected and Plaintiff will not be so limited. *See* 1970 Amendments, Fed. Civ. P. 33(b) ("Although in exceptional circumstances reliance on an answer [to a contention interrogatory]

**1. Web Instructor-Led Learning (WILL) Restructuring**

Under ADA regulations, a reasonable accommodation may include "[j]ob restructuring," that is altering a job "by reallocating or redistributing nonessential, marginal job functions." 29 C.F.R. § 1630.2(o)(2)(ii); 29 C.F.R. Part 1630 Appx.; *see also* 42 U.S.C. § 12111(9)(B).[5] Defendant argues that, even if Plaintiff was capable of teaching WILL courses, restructuring the IC position to require only the teaching of internet classes would have stripped the job of its essential functions and rendered the proposed accommodation unreasonable. Defendant specifically states travel and face-to-face interaction are essential functions of the IC position which are excluded from the restructured WILL position proposed by Plaintiff.

Defendant is correct that, while restructuring may be a reasonable accommodation, "[t]he ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees." *Dark*, 451 F.3d at 1079; *see also* 29 C.F.R. Part 1630 Appx. ("An employer or other covered entity is not required to reallocate essential functions."). The critical determination is thus whether travel and face-to-face interaction are essential functions of the IC position, which is a "highly fact-specific inquiry." *Cripe v. City of San Jose*, 261 F.3d 877, 888 (9th Cir. 2001). While "consideration" must "be given to the employer's judgment as to what functions of a job are essential," such evidence is not conclusive. 42 U.S.C. § 12111(8); *see also Cripe*, 261 F.3d at 887. According to the regulations, six criteria, in addition to the employer's judgment,

---

may cause such prejudice that the court will hold the answering party bound to his answer . . . the interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers he receives and cannot base prejudice on such reliance.").

[5] Although it is unclear what level of deference, if any, is owed to the Equal Employment Opportunity Commission's ADA regulations and interpretive guidance implementing those regulations, "[t]he regulations nonetheless offer valuable guidance" in understanding the Act. *Puckett v. Park Place Entm't Corp.*, 332 F. Supp.2d 1349, 1355 n.5 (D. Nev. 2004); *see also Equal Employment Opportunity Comm'n v. United Parcel Serv., Inc.*, 306 F.3d 794, 801 n.4 (9th Cir. 2002) ("The Supreme Court has not decided whether the EEOC regulations are reasonable or are entitled to deference, although in several cases it has assumed that they are.").

must be taken into account for this determination, four of which are relevant here: "ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function . . . [and] (vi) The work experience of past incumbents in the job . . ." 29 C.F.R. § 1630.2(n)(3).[6]

The employer's judgment obviously weighs in Defendant's favor. With respect to Criteria Three and Six, Defendant provides significant admissible evidence establishing that, in practice, ICs spend much time traveling and having face-to-face contact with clients. Specifically, Defendant cites the deposition testimony of Mark Phillips who stated: "[T]he primary mechanism for training was instructor led training . . . that was the instructor in front of a class" and "Computer Associates primarily was an instructor-led delivery mechanism . . . instructors being live in the classroom all over North America" (Doc. 59 Ex. 5 at 44:15-17, 74:13-17). Plaintiff's own deposition statements lend further support to Defendant's argument:

> [Defense Counsel:] Would it be a fair statement that[,] more often than not, your work on behalf of [Defendant] took place outside of the Phoenix Metropolitan region? [Plaintiff:] Correct.
> ***
> [Defense Counsel:] But it was, in fact, the practice of [Defendant] to send instructional – well, instructors, such as yourself, outside of Arizona to conduct their work, correct? [Plaintiff:] Quite often, yes.
> (Doc. 59 Ex. 2 at 63:24-64:2, 90:1-5).

Plaintiff responds by citing to other deposition testimony from Phillips that "[h]aving the instructors teach locally was in the best interests of the company" because "it's [] enormously expensive" to pay for IC travel and thus "when and wherever possible, for business reasons, [Defendant] tr[ies] to schedule [ICs] locally" (Doc. 71 at ¶ 8). However, this testimony sheds

---

   [6] Two categories will not be considered because neither party offers such evidence: "(v) The terms of a collective bargaining agreement" and "(vii) The current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3).

no light on the question of "[t]he amount of time spent on the job performing" travel and face-to-face interaction. 29 C.F.R. 1630.2(n)(3)(iii). Rather, the statements only show that Defendant preferred to keep ICs teaching locally, not what was actually required of ICs.

With respect to Criterion Four, Defendant relies on the Lester affidavit which makes clear that allowing an IC to teach only WILL courses would have shifted too much responsibility onto the remaining ICs:

> [Defendant] never had an internet instructor position. Rather, internet classes were taught by Instructional Consultants as part of their duties . . . Assignments to teach internet classes were spread among the instructional consultants, based on their certifications . . . There were never enough internet classes to justify making internet instruction a separate position. Indeed, there were never enough internet classes offered to even fill one full-time position. And due to certification requirements and [Defendant's] diversified product portfolio, one individual could not have successfully acquired all the skills needed to cover every CA internet class.

(Doc. 59 Ex. 1 at ¶¶ 5-6, 8).

Plaintiff offers no persuasive argument in response, but rather objects to the statements for lack of foundation and for violation of Federal Rules of Civil Procedure 26(a) and 26(e) (Doc. 71 at ¶ 127-30). Lester's position as Senior Vice President of Global Services Education provides an adequate basis for her knowledge of the IC position requirements. For the reasons discussed above in Section II.A, Plaintiff's Rule 26 objections are also overruled.

With respect to Criterion Two, Defendant points to an internet job advertisement, posted directly prior to Plaintiff's termination, which describes the IC position as requiring extensive business travel (seventy-five percent of the job) (Doc. 59 Ex. 3). Plaintiff disputes the relevance of the evidence, arguing the job posting, dated January 10, 2004, "was issued . . . nearly five months after the last day [Plaintiff] worked" for Defendant (Doc. 71 at ¶ 6). Plaintiff argues the more relevant job description is found in an internet posting dated August 16, 2001 which states: "The Consultant performs his/her duties either locally, interstate or overseas as requested by management" (Docs. 61 Ex. 28; 70 Ex. 5). Nevertheless, for the purpose of determining whether Plaintiff's Phoenix-based IC position

required significant amounts of travel, the two job descriptions are reconcilable. The 2004 job description has a seventy-five-percent travel requirement for ICs. The 2001 job description gives discretion concerning IC travel to local management. However, from the deposition excerpts above, Defendant's Phoenix office required extensive IC travel.

Thus, there is no genuine issue of material fact that Plaintiff's IC position required significant amounts of travel and face-to-face interaction with clients, both of which were essential functions of the position. Accordingly, Plaintiff's proposed WILL teaching accommodation would strip the IC position of its essential functions and is not a reasonable accommodation. Defendant will thus be granted summary judgment on this issue.

**2. Part-Time Work**

According to ADA regulations, "part-time or modified work schedules" may be a reasonable accommodation under certain circumstances. 29 C.F.R. § 1630.2(o)(2)(ii); 42 U.S.C. § 12111(9)(B); *see also e.g. Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 498 (7th Cir. 2000) ("If . . . [a coworker] was available to fill in for whatever hours [the employee] did not cover at the outset, gradual return to full-time work would have been a reasonable accommodation that the ADA required [the employer] to provide."). Defendant argues such an accommodation would have been unreasonable because Defendant "simply did not have any part-time positions available" (Doc. 88 at 7). Defendant is correct that an employer need not create a new part-time position to accommodate a disabled employee. *See Wellington v. Lyon County Sch. Dist.*, 187 F.3d 1150, 1155 (9th Cir. 1999) ("[T]he ADA does not impose a duty to create a new position to accommodate a disabled employee."); *see also e.g. Treanor v. MCI Telecomm.'s Corp.*, 200 F.3d 570, 575 (8th Cir. 2000) ("[T]he ADA does not require an employer to create a new part-time position where none previously existed."); *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998) (same). Plaintiff offers no specific evidence suggesting a part-time position, which could have accommodated

Plaintiff's gradual return to work, existed or would otherwise have been a reasonable accommodation given the structure and IC needs of Defendant's Phoenix office.

As Plaintiff has failed to satisfy the burden of showing such accommodation would have been reasonable, summary judgment will be granted Defendant on this issue.

**3. Extended Leave**

ADA regulations concerning reasonable workplace accommodations at 29 C.F.R. § 1630.2(o) have been interpreted by the Equal Employment Opportunity Commission ("EEOC") to include extended leave. *See* 29 C.F.R. Part 1630.2 Appx. ("There are any number of other specific accommodations that may be appropriate for particular situations but are not specifically mentioned in [29 C.F.R. § 1630.2(o)] . . . other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"); *see also Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001). Extended leave will be a reasonable accommodation if it permits the employee, "upon his return, to perform the essential functions of the job" without posing an undue burden on the employer. *Humphrey*, 239 F.3d at 1135-36; *see also Nunes*, 164 F.3d at 1247 (Extended leave "may be a reasonable accommodation if it does not pose an undue hardship on the employer."); 42 U.S.C. § 12112(b)(5)(A). Once an employee has met the burden of showing that extended leave would be a reasonable accommodation, the burden shifts to the employer to show how such leave would have posed an undue hardship. *See* 42 U.S.C. § 12112(b)(5)(A). "Undue hardship refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business." 29 C.F.R. Part 1630 Appx. (internal citation omitted); *see also* 29 C.F.R. § 1630.2(p).

Defendant argues one-year of extended leave,[7] beyond the four-and-one-half-month leave already granted to Plaintiff, would have posed an undue hardship to Defendant and thus was unreasonable. Specifically, Defendant argues Plaintiff's leave forced Defendant to cancel or postpone classes or hire costly independent contractors to cover for Plaintiff's absence. In support, Defendant cites to a memorandum by Mark Phillips, dated January 12, 2004, which summarizes the economic impact of Plaintiff's extended absence:

> [Plaintiff's] absence is continuing to hinder the abilities of [Defendant's] Education Delivery team to meet customer demand . . . Additionally, with [Plaintiff] absent from our team, client demand is requiring that [] Education (Delivery) either use third party instructors at higher rates, or, in certain cases, we must decline (or unreasonably postpone) billable customer engagements due to lack of certified instructors.

(Doc. 59 Ex. 8 at 1).

Plaintiff attempts to dispute Phillips' memo by arguing Defendant hired third-party contractors on a regular basis (Docs. 61 at ¶ 26; 71 at ¶ 149). However, the fact that Defendant utilized independent contractors does not overcome the import of Phillips' memo concerning the expense of hiring *additional* contractors. Plaintiff also argues Phillips' memo was contrived in anticipation of litigation (Doc. 71 at ¶ 149). In support, Plaintiff points to an e-mail communication between Phillips and Deborah McCain, Defendant's Human Resources Manager, occurring approximately one week before Defendant received Plaintiff's final medical update and two weeks before Plaintiff's termination (Docs. 61 at ¶¶ 206-07; 71 at ¶ 149). But merely because Defendant's personnel discussed the economic hardships posed by Plaintiff's absence and the business necessity of replacing Plaintiff prior to Plaintiff's final medical update and termination does not create a genuine issue of material fact on this issue. *See Villiarimo*, 281 F.3d at 1065 n.10 (A "court need not draw *all* possible inferences in [the non-movant's] favor, but only all *reasonable* ones."). Plaintiff also argues the memo contains no "objective evidence" or "cost analysis" and is thus insufficient to carry

---

[7] The one year estimate is based on the evaluation of Dr. Drake from January 2004, cited by Plaintiff, which stated Plaintiff could return to work in January 2005 (Doc. 61 Ex. 29).

Defendant's summary judgment burden (Doc. 71 at ¶ 149). However, Plaintiff cites no authority stating such analysis is required to show undue hardship. Nor does Plaintiff rely on admissible evidence suggesting the anticipated results of such analysis, if performed, would favor Plaintiff. Hence, Plaintiff's argument is pure speculation.

Accordingly, summary judgment will be granted Defendant on this issue.[8]

## 4. Scheduling Coordinator Reassignment
### a. Standard

Under ADA regulations, if an employee is unable to perform the essential functions of his current job, reassignment to a vacant position which the employee is qualified to perform may be a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o)(2)(ii) ("Reasonable accommodation may include but is not limited to . . . reassignment to a vacant position"); 42 U.S.C. § 12111(9) (same); *see also Dark*, 451 F.3d at 1089 ("[Plaintiff] is a qualified individual under the ADA if he can perform the essential functions of a reassignment position, with or without reasonable accommodation, even if he cannot perform the essential functions of the current position.") (internal citation omitted). According to EEOC interpretive guidance, reassignment is generally reserved for situations in which "accommodation within the individual's current position would pose an undue hardship." 29 C.F.R. Part. 1630 Appx. Reassignment may be to "a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation." *Id.*

### b. Plaintiff's Allegations

---

[8] Defendant also argues Plaintiff's requested leave was *per se* unreasonable because it was "essentially indefinite" (Doc. 88 at 12). Given that Plaintiff has failed to materially dispute the hardship posed by the requested one-year-leave accommodation, this question need not be reached.

On August 12, 2003, Plaintiff applied for reassignment to a vacant Scheduling Coordinator position (Docs. 61 at ¶ 95; 74 at ¶ 95). It is undisputed Plaintiff was "overqualified" for the reassignment (Doc. 59 at ¶ 119). On or about September 4, 2003, Defendant denied Plaintiff's application, determining "he was not the right candidate for the position" (Docs. 61 at ¶ 132, Ex. 17 at 17:11-12; 74 at ¶ 132). The position was filled on September 22, 2003 (Docs. 61 at ¶ 135; 74 at ¶ 135).

According to Plaintiff, Defendant's failure to consider Plaintiff for the position, despite Plaintiff's qualifications, constituted unlawful discrimination on the basis of disability. In support, Plaintiff cites to, and Defendant does not dispute, Defendant's standard recruiting procedure which required Defendant to interview qualified internal candidates who were approved for reassignment by their managers and notify the internal candidates of the status of their candidacy (Docs. 61 at ¶ 126; 74 at ¶ 126). Plaintiff argues Defendant violated the procedure by failing to interview Plaintiff and failing to notify him why he was not interviewed or otherwise considered for the position (Docs. 61 at ¶ 135; 74 at ¶ 135). According to Plaintiff, Defendant's failure to follow procedure in evaluating Plaintiff's reassignment application, when combined with discriminatory statements made about Plaintiff's disability by Defendants' human resources personnel in August 2003,[9] raise a genuine issue of materially disputed fact concerning whether Defendant violated the ADA by not granting Plaintiff's reassignment request.[10]

Defendant responds with three arguments why it is not liable, as a matter if law, for failing to grant Plaintiff's requested reassignment: (1) Defendant had no knowledge the

_____

[9] *See e.g. infra* Note 16.

[10] Defendant disputes Plaintiff's interpretation of the facts, arguing Plaintiff's application "likely was not considered for the scheduling coordinator position because he was overqualified and overpaid, and the hiring manager believed that [Plaintiff] would not have been challenged by the position and therefore would have become quickly dissatisfied, and therefore would not have stayed in the position for very long" (Doc. 59 at ¶ 119). Defendant also objects to Plaintiff's evidentiary facts as irrelevant; the Court disagrees.

reassignment was requested as an ADA accommodation; (2) Plaintiff's disability rendered him unable to perform the duties of the Scheduling Coordinator position with or without reasonable accommodation; and (3) Defendant decided in good faith not to reassign Plaintiff after engaging in the statutorily required interactive process.

**c. No Knowledge of Requested Accommodation**

Defendant argues the proposed Scheduling Coordinator reassignment cannot be a reasonable accommodation because "Plaintiff did not inform [Defendant] that he was seeking the position as an accommodation for a protected disability" and "[Defendant] had no knowledge of Plaintiff's disability" at the time Plaintiff applied for the reassignment in August 2003 (Doc. 88 at 6). *See* 29 C.F.R. Part 1630 Appx. ("Employers are obligated to make reasonable accommodation only to the physical or mental limitations resulting from the disability of a qualified individual with a disability that is known to the employer . . .Thus, an employer would not be expected to accommodate disabilities of which it is unaware."). In support, Defendant cites deposition testimony from Deborah McCain and Plaintiff's application for reassignment, both of which suggest Plaintiff applied for and was denied reassignment before Defendant learned of Plaintiff's mental disability (Doc. 59 Ex. 7 at 62:15-63:11; Ex. 43). Plaintiff disputes Defendant's evidence with Plaintiff's sworn affidavit stating Plaintiff informed Phillips of his mental disability in mid-August 2003, after Plaintiff applied for the reassignment but well before the application was denied in September 2003 (Doc. 61 Ex. 1 at ¶ 24). The affidavit also states Plaintiff specifically informed one of Defendant's human resources recruiters that Plaintiff was applying for the Scheduling Coordinator position to accommodate his mental disability (Doc. 61 Ex. 1 at ¶ 33).

Defendant contends Plaintiff's statements must not be considered because they are inadmissible hearsay and "contradicted by Plaintiff's deposition testimony," the latter

argument seeming to invoke the sham affidavit doctrine. (Doc. 74 at ¶¶ 69, 96, 134).[11]  *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (the sham affidavit doctrine is applicable when "a party who has been examined at length on deposition" attempts to "raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony").

The alleged hearsay statement, in relevant part, is as follows:

> I was contacted by the department responsible for [the Scheduling Coordinator] position so they could verify that I was willing to take a salary cut.  I told them that I was willing to take a salary cut.  In response to their inquiry regarding why I would be willing to take a salary cut, I replied I was having medical difficulties which interfered with my current face-to-face teaching job duties and that I believed the job I was applying for would accommodate my medical condition.

(Doc. 61 Ex. 1 at ¶ 33).

This statement is not hearsay, as it is not being offered to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801.  Rather, the import of the statement is to show Defendant was informed, in August 2003, that the Scheduling Coordinator reassignment was being sought as an accommodation for Plaintiff's disability, disputing Defendant's claim of having no knowledge that Plaintiff was seeking the reassignment as an accommodation. Accordingly, Defendant's objection is overruled.

With respect to Plaintiff's conflicting sworn statements, a comparison of the affidavit statement and Plaintiff's deposition testimony undermines Defendant's argument.  The relevant portion of the affidavit states:

> In mid-August, I informed Phillips that my disability was impairing my ability to socially interact with strangers.

---

[11] Defendant also raises a relevance objection which appears to be based on Plaintiff's failure to include the Scheduling Coordinator reassignment accommodation in a response to a discovery interrogatory.  For the reasons stated at Note 4, the objection is overruled.

> Specifically, I was unable to process information or engage in face-to-face dialogue with strangers.
>
> (Doc. 61 Ex. 1 at ¶ 33).[12]

The relevant deposition testimony provides:

> [Defense Counsel]: [D]id you tell Mr. Phillips at the time, in August, that you believed you had a stroke? [Plaintiff:] I believe so.
>
> (Doc. 59 Ex. 2 at 111:7-10).

Plaintiff's deposition testimony does not contradict the affidavit statement but rather adds the additional fact that Plaintiff informed Phillips of a second health problem, involving a stroke, during the same time period in which Plaintiff informed Phillips of his mental disability. Because the statements do not contradict, the sham affidavit doctrine, assuming Defendant's reliance on it, is inapplicable and Plaintiff's affidavit statement must be taken as true. *See Kennedy*, 952 F.2d at 266; *see also Anderson*, 477 U.S. at 255-256.

**d. Plaintiff Was Not Qualified**

Defendant further argues the Scheduling Coordinator reassignment was not a reasonable accommodation because Plaintiff was unable to perform the essential functions of the position. *See* 42 U.S.C. § 12111(8) (A "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). In support, Defendant cites numerous medical evaluations from Dr. Nowlin and Dr. Drake, suggesting Plaintiff could not perform many basic work functions, such as Dr. Drake's January 9, 2004 letter to Defendant opining that Plaintiff was seriously limited in his ability to think, interact with others,

---

[12] Insofar as Defendant challenges this statement as inadmissible hearsay, for the same reasons described above, the objection is overruled. The statement is not being offered for the truth of the matter asserted, that is, in August 2003 Plaintiff's ability to interact with strangers was impaired. Rather, the statement is cited to show that in August 2003 Plaintiff made Phillips aware of his disability.

concentrate, and read (Doc. 59 Ex. 23).[13] According to Defendant, the basic skills which Plaintiff lacked were necessary to function as a Scheduling Coordinator, in the absence of which, Plaintiff could not have reasonably performed the position, regardless of accommodation. Although Defendant cites no evidence concerning the qualifications of the Scheduling Coordinator position, Plaintiff admits the position required "excellent communication skills . . . excellent analytical skills . . . [and the] ability to succeed in a team based as well as autonomous environment" (Doc. 61 at ¶ 127). Plaintiff responds, citing his own affidavit statements in support, that he would have been able to perform the duties of the Scheduling Coordinator position without accommodation.[14]

Defendant attempts to overcome Plaintiff's factual disputes by asserting Plaintiff's statements concerning his own functional capacity are rendered irrelevant by the contradicting evaluations of Plaintiff's treating physicians (Doc. 74 at ¶¶ 69, 93-94, 121, 124). To support this position, Defendant cites *Allen v. Pacific Bell*, 348 F.3d at 1114-15. However, Defendant's reading of *Allen* is too broad. As discussed above, *Allen* merely holds that an employer's duty to consider a requested accommodation vis-a-vis the interactive process ends if the employee fails to cooperate by providing necessary medical validation and instead urges the employer to rely solely on employee's own statements. *Allen* did not modify the basic rule of summary judgment that the evidence of the non-moving party is to be believed, if admissible, and all reasonable inferences drawn in its favor.[15] *See Anderson*, 477 U.S. at 255-

---

[13] *See* Doc. 59 at ¶¶ 72-73, 79-83.

[14] According to Plaintiff's affidavit, the Scheduling Coordinator position "would have been a perfect job for [Plaintiff] because it did not require any travel or face-to-face interaction with students," which Plaintiff claims were his primary limitations (Doc. 61 Ex. 1 at ¶ 30). Plaintiff also asserts Mark Phillips agreed "that he thought the scheduling position would be perfect for [Plaintiff's] needs" and endorsed Plaintiff's application (Doc. 61 Ex. 1 at ¶ 32). Although Defendant objects to these statements as irrelevant, the Court disagrees (Doc. 74 at ¶¶ 95-97).

[15] *See also e.g. Roberts v. Boeing Co.*, 2006 WL 4704616, *8 (C.D. Cal. 2006) ("In *Allen*, the court was concerned solely with whether the plaintiff's employer 'failed to fulfill its interactive duty.' *Allen*, 348 F.3d at 1116. Its holding was limited to a finding that the defendant 'did not have a duty under the ADA or California law to engage in further interactive processes"); *Reza v. IGT*,

- 21 -

256. Accordingly, though the doctors' evaluations undermine, they do not cancel out Plaintiff's sworn statements attesting that Plaintiff was capable of performing the essential functions of the Scheduling Coordinator position in August/September 2003.

Citing *Villiarimo*, 281 F.3d at 1059 n.5, Defendant also argues that the Court should ignore Plaintiff's self-assessment of functional capacity because the statements are "uncorroborated and self-serving testimony" (Doc. 74 at ¶¶ 68-70). Defendant misreads *Villiarimo*, which stands for the narrow position that a plaintiff cannot survive summary judgment solely with statements that are inadmissible for lack of personal knowledge, not the broader position that all "uncorroborated and self-serving" statements are inadmissible on summary judgment. *See Sec. & Exch. Comm'n v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007).

Defendant further attempts to cancel out Plaintiff's self-assessment of functional capacity by pointing to Plaintiff's arguably contrary prior written statements, again seeming to invoke the sham affidavit doctrine (Doc. 58 at 8, 14). *See Kennedy*, 952 F.2d at 266. Defendant specifically refers to a disability insurance form completed by Plaintiff in September 2003 and an ADA Questionnaire completed by Plaintiff in April 2004 which suggest Plaintiff was unable to perform the basic functions required of a Scheduling Coordinator, including statements concerning Plaintiff's "inability to follow conversations" and "[d]ecreased ability to think, concentrate, focus and reason" (Doc. 59 Ex. 4, 42). However, even if the two documents are admissible, only prior *sworn* statements are sufficient to invoke the sham affidavit doctrine. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). There is no indication that either document was signed under penalty of perjury.

**e. Interactive Process**

---

2008 WL 2048357, *3 (D. Nev. 2008) (same); *Neal v. Kraft Foods Global, Inc.*, 2009 WL 799644, *8 (D. Or. 2009) (same).

Defendant also argues it is not liable for failing to reassign Plaintiff to the Scheduling Coordinator position because it engaged in the interactive process. Defendant is correct that, under the ADA, an employer is not liable for an allegedly wrongful employment action if, after an employee requests a reasonable accommodation or the employer recognizes the need for such accommodation, the employer engages in a good-faith effort to determine how best to accommodate the employee's disability, otherwise known as the interactive process. *See Humphrey*, 239 F.3d at 1137 ("Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) ("Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process.") (internal citation omitted). "The interactive process requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *Zivkovic*, 302 F.3d at 1089; *see also* 29 C.F.R. Part 1630 Appx.

Defendant argues it is not liable for failing to accommodate Plaintiff because " seeking frequent updates from Plaintiff's medical providers regarding Plaintiff's condition and obtaining clarification of those updates when necessary" satisfied Defendant's interactive process obligation (Doc. 88 at 3-4). In support, Defendant cites *Allen v. Pacific Bell*, for the position that an employer's obligation vis-a-vis the interactive process is satisfied if an employer requests a medical evaluation from the employee's doctor and the evaluation suggests the employee cannot work. *See* 348 F.3d at 1114-15. However, Defendant's reading of *Allen* is too broad. *Allen* stands for the more limited principle that an employer's obligation to consider a particular accommodation vis-a-vis the interactive process ends if medical validation is requested but the employee refuses to cooperate and instead asks the employer to rely on the employee's statements rather than a doctor's opinion. Further, even if

Defendant's actions had technically satisfied its interactive process obligation, Plaintiff materially disputes Defendant's good faith, offering evidence of conduct by Defendant's human resources staff from which a jury could find Defendant intended to stifle discussion concerning potential accommodations for Plaintiff's disability.[16]

Accordingly, the issue of whether Defendant is liable for failing to reassign Plaintiff to a Scheduling Coordinator position in August/September 2003 is a materially disputed question of fact that must be left for the jury to decide.

**IV. Defendant's Motion For Summary Judgment: § 1981 Claim**

Count II of the Complaint alleges Defendant unlawfully terminated Plaintiff on account of race in violation of 42 U.S.C. § 1981. In order to prevail on a § 1981 claim, a plaintiff must first establish a *prima facie* case showing Plaintiff is: 1) protected under § 1981; 2) was performing his job satisfactorily; 3) suffered adverse employment action and 4) was treated differently than similarly situated employee(s) who were not members of Plaintiff's protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1928 (9th Cir. 2006). Defendant challenges the claim for failure to establish two *prima facie* elements, racially differential treatment and satisfactory job performance (Doc. 58 at 15-16). Plaintiff's papers

---

[16] For example, Plaintiff offers an e-mail from Defendant's on-site human resources representative (Anatoli Kostouros) to Mark Phillips, dated August 29, 2003, refusing to consider Plaintiff's return to work until Plaintiff was fully recovered and thus preventing any discussion concerning accommodation: "No. He cannot work while he is on s[ick] leave. Until he shows us something that says he can work with no restrictions[,] I do not want him working. Sorry" (Doc. 61 Ex. 19). Plaintiff offers deposition testimony from Phillips supporting the same inference: "When I was having a conversation with Anatoli to that effect, she said, Look, you are not to have contact with him at all . . . you are not to have contact with him, period" (Doc. 61 Ex. 3 at 80:16-21). While Defendant objects to this evidence as irrelevant, for the reasons discussed above, the Court disagrees (Doc. 74 at ¶¶ 99, 106-108). In another example, Plaintiff testifies to a January 2004 conversation with Deborah McCain, Defendant's Human Resources Manager, during which Plaintiff attempted to discuss potential accommodations and McCain refused to participate, instead repeatedly citing Plaintiff's medical evaluations for the position that accommodation was impossible (Doc. 61 at ¶ 203; Ex. 2 at 182:15-183:1, 183:14-184:13, 184:21-185:12).

- 24 -

have not presented any evidence to establish the fourth element. Plaintiff has thus failed to create a genuine dispute of material fact on the § 1981 claim.

**V. Plaintiff's Motion For Summary Judgment**

Plaintiff seeks summary judgment on the ADA claim, arguing for the Court to find: "(1) [Plaintiff] has a mental impairment that substantially limits one or more major life activities; (2) [Plaintiff] was a 'qualified individual' under the ADA; (3) [Defendant] failed to accommodate [Plaintiff's] disability; and [4] Defendant terminated [Plaintiff] because of his disability" (Doc. 60 at 1). Plaintiff's Motion will be denied for failure to establish, beyond a dispute of material fact, that Plaintiff is a qualified individual as defined in 42 U.S.C. § 12111(8), that is, an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *See McGregor*, 187 F.3d at 1115 (plaintiff must establish all *prima facie* elements of an ADA claim beyond dispute of material fact to prevail on summary judgment).

Plaintiff argues two proposed reasonable accommodations rendered Plaintiff a "qualified individual" under the ADA: (1) restructuring the IC position to permit Plaintiff to teach only WILL courses and (2) reassigning Plaintiff to a vacant Scheduling Coordinator position. As discussed above in Section III.B.1, the proposed WILL restructuring lacked the essential functions of the IC position and thus was not a reasonable accommodation. Plaintiff's Motion offers no additional evidence or argument on this issue and thus summary judgment will be denied. With respect to the Scheduling Coordinator reassignment, Defendant disputes Plaintiff sufficiently informed Defendant that the requested reassignment was for the purpose of accommodating Plaintiff's disability. *See* 29 C.F.R. § 1630.2(o)(2)(ii) ("Reasonable accommodation may include but is not limited to . . . reassignment to a vacant position"); 29 C.F.R. Part 1630 Appx. ("[A]n employer would not be expected to accommodate disabilities of which it is unaware."). In support, Defendant relies on the deposition testimony of Deborah McCain who asserted Defendant was not aware of Plaintiff's

mental disability until after Plaintiff's application for reassignment had been rejected (Doc. 59 at ¶¶ 136-37).  Because Defendant's evidence must be taken as true, this issue remains a matter for the jury to decide and summary judgment will be denied.  *See Anderson*, 477 U.S. at 255-256.

Accordingly,

**IT IS ORDERED** Defendant's Motion for Summary Judgment (Doc. 58) **IS GRANTED IN PART AND DENIED IN PART**, in accordance with this opinion.

**FURTHER ORDERED** Plaintiff's Motion for Summary Judgment (Doc. 60) **IS DENIED**.

**FURTHER ORDERED** Plaintiff's Motion for Sanctions (Doc. 66) **IS DENIED**.

**FURTHER ORDERED** this case is now ready to set for trial.  Order to follow.

DATED this 1st day of September, 2009.

Roslyn O. Silver
United States District Judge